## Moore Estate v. Lebrone

C.P. of Allegheny County, no. 36 of 1984 and GD 86-13744.

*Paul G. Kachulis,* for plaintiff.
*Arnold M. Horovitz,* for defendant Lebrone.
*Andrew J. Banyas III,* for defendant Harford Insurance.
*Lewis E. Linn III,* for defendant Allegheny Valley Bank.
*Elaine V. Preston,* for defendant Miller.
*B. Mark Chernoff,* for defendant Paslow.

ROSS, E., *J.,* December 5, 1995—Allegheny Valley Bank, defendant, asks for judgment of non pros on the basis of inactivity on the record in excess of two years. The Harford Mutual Insurance Company, defendant, orally has joined in this motion originally filed September 21, 1995.

## THE FACTS

Donald H. Melaney, administrator d.b.n.c.t.a. on behalf of the estate of Francis Moore, deceased, by complaint verified August 8, 1986, brought a civil negligence suit against several defendants, among which were Harford Mutual Insurance Company, a corporation, and Allegheny Valley Bank, a corporation. Numerous responsive pleadings were filed to the complaint by the various defendants and a withdrawn appeal taken in the years 1986 and 1987.

The civil action spun off from estate proceedings in the orphans' court in which the Honorable Eunice Ross surcharged other defendants, Charles Miller Jr., the executor of the estate, Sam Fibus, executor de son tort, Elizabeth Lebrone, executrix de son tort, and Albert Florian Paslow, Esquire. Miller, Lebrone and Fibus breached fiduciary duties to the estate. Lebrone, Fibus and Paslow improperly converted estate assets.

The estate proceedings arose on petition of estate beneficiary, William Murray, who sought an inventory and account from co-beneficiary/executor, Charles Miller. After asset misappropriation was revealed in limine, the court on May 28, 1985, summarily removed Miller, who had qualified January 4, 1984, as executor of the January 7, 1982 will of Francis Moore who died December 7, 1983. Melaney was appointed successor administrator on February 5, 1986, but died January 18, 1987, after filing this civil suit. Paul G. Kachulis, Esquire, succeeded Melaney on January 26, 1987, as administrator d.b.n.c.t.a.

Murray on July 30, 1985, asked the orphans' court for a surcharge of Lebrone (his former wife), Paslow and Fibus for misapplication of the proceeds of Harford fire insurance policy 1061920 paid by reason of fires on June 6 and 7, 1984, which destroyed decedent's real estate at 251 Mansion Street, Pittsburgh, Pennsylvania.

The court found that on January 18, 1984, the ailing Miller and Murray signed a power of attorney drafted by Sam Fibus, the broker with whom the Mansion Street property was listed for sale, authorizing "Elizabeth Lebrone to administer Francis Moore Estate . . . to act

in our behalf in the selling of . . . 251 Mansion Street . . . to refinance the mortgage . . . or . . . to apply for a loan. This also applies to all household furnishings and to 1974 Cadillac, license plate no. 637-064." Fibus shared an office with his business associate, Albert Florian Paslow, Esquire. Murray tried unsuccessfully within days to restrict further the Lebrone powers in the document.

Fibus without Paslow's knowledge solicited a beneficiary designation form from Harford and prepared a new fire policy designation in favor of Lebrone as "executrix." After the fires, Lebrone falsely told Harford that Paslow represented the estate and executed the proof of loss form as executrix. Fibus filled in the appropriate blanks and forged Paslow's name thereon as estate attorney.

Harford, without asking Lebrone for a short certificate issued by the Register of Wills of Allegheny County certifying Lebrone's appointment as executrix (which of course could never have been issued), issued two checks payable to the estates of decedent and his deceased wife and to "Elizabeth Lebrion (sic), executrix, and Albert Florian Paslow." The first check for $38,000 was also payable to mortgagee Lomas and Nettleton (no longer a party defendant) which, after paying the mortgage debt of $8,272.84 owed it, remitted the balance of $29,727.16 by check payable to Lebrone as executrix and to Paslow. Harford's second check for $2,077.66 payable to Lebrone as executrix and to Paslow was cashed by Allegheny Valley Bank without a request for a short certificate evidencing Lebrone's fiduciary status. Fibus forged endorsements of Paslow's name on each check. The honoring of the forged endorsement

is not at issue in the suit against the bank since it was not pleaded.

Fibus converted $2,883.35 of the proceeds after giving Paslow $500 and Lebrone dissipated the balance. The court on June 10, 1986, surcharged each malefactor as to the converted $31,804.32. The estate on May 6, 1987, reduced the surcharges to judgment but Lebrone has left the country without leaving assets available for execution and Fibus and Paslow have proved to be execution-proof.

After the civil complaint, based upon the negligence of the corporate defendants in not requiring certificates of fiduciary appointment before paying estate moneys to Elizabeth Lebrone and her purported attorney, was filed, on August 8, 1986, the Honorable Bernard J. McGowan on January 26, 1988, transferred the civil matter to the estate court judge, the Honorable Eunice Ross, who received no notice of the transfer until March 21, 1990, when motions for summary judgment were filed by Harford, Paslow and another defendant bank, Horizon Financial. In the meantime civil Administrative Judge Cappy had not ruled on a motion filed February 28, 1988, to reconsider the transfer to the orphans' court. By this time Judge Ross had been transferred to the civil division on May 11, 1990. She denied the motions for summary judgment and set the matter down for jury trial before herself on September 12, 1990, at 9:30 a.m. Harford filed a motion on July 24, 1990, for reconsideration of the denial of summary judgment which Judge Ross dismissed on November 21, 1990, by a memorandum opinion noting that a sole issue of fact raised by the pleadings and other documents remained, that is, whether defendants were negligent in paying moneys out to an unqualified person who had not presented a certificate of her appointment as executrix.

In late 1990 the parties indicated to Judge Ross, a civil division judge, that they would attempt settlement of the case. Still pending was the motion presented to Judge Cappy to reconsider the prior transfer to Judge Ross as an orphans' court judge.

On April 19, 1991, Harford filed a supplemental pre-trial statement of its expert that Harford acted with due care.

In the meantime in early 1993 Judge Ross was re-assigned to the orphans' court and in early 1994 re-assigned to the civil division. On August 29, 1995, four years after the last pleading was filed by anyone, Harford went before the Honorable Bernard McGowan asking for a ruling on the motion filed on February 2, 1988, for reconsideration of the order of January 26, 1988, transferring the civil matter to Judge Ross as an orphans' court judge. Judge McGowan denied reconsideration, meaning probably that Judge Ross, though a civil judge, would try the case transferred to the orphans' court. This interpretation is strengthened by the order of orphans' court Administrative Judge Robert Kelly, transferring the issues raised by the non pros motion to Judge Ross.

## THE LAW APPLIED TO THE FACTS

The question of the grant of non pros is addressed to the discretion of the trial court which will not be reversed in the absence of an abuse of discretion: *Gallagher v. Jewish Hospital Association of Philadelphia,* 425 Pa. 112, 113, 228 A.2d 732, 733 (1967). Failure by a plaintiff to bring an action to trial in due time may be ground for the grant of non pros upon motion of a defendant: *Gallagher v. Jewish Hospital Association, supra* at 113, 228 A.2d at 733; *Hruska v. Gibson,*

*Executor,* 316 Pa. 518, 520, 175 A. 514, 515 (1934); Pa.R.C.P. 1037(c).

In the controlling case of *Penn Piping Inc. v. Insurance Company of North America,* 529 Pa. 350, 355-57, 603 A.2d 1006, 1008-1009 (1992), where plaintiff filed a complaint in 1981, and never moved for judgment in default of an answer, defendant's 1987 motion for non pros was granted. The court indicated that if a plaintiff fails to proceed with reasonable promptitude with the case and has no compelling reason to account for the delay for a period exceeding the applicable statute of limitations, a presumption of prejudice to the defendant arises which, if not rebutted, compels a grant of non pros. *Id.* at 354-55, 603 A.2d at 1008. Prejudice is defined as the difficulty of defending because of the lapse of time and the attendant diminution in the defendant's ability to present factual information in the event of trial because of the death or unavailability of material witnesses or the impairment of memory of witnesses called after many years or because of the loss or disappearance of documentary evidence. *Carroll v. Kimmel,* 362 Pa. Super. 432, 438-39, 524 A.2d 954, 957 (1987), *appeal denied,* 517 Pa. 613, 538 A.2d 496 (1988); *Moore v. George Heebner Inc.,* 321 Pa. Super. 226, 229, 467 A.2d 1336, 1337 (1983); *Hinsdale Mining and Milling Co. v. National Bank of Western Pennsylvania,* 62 P.L.J. 417, 418 (1914); *Sarver v. Reed,* 62 P.L.J. 378 (1914); *Novak v. Cohen,* 64 D.&C.2d 322, 325-26 (1974); *Farr v. Peoples Coal Company,* 10 D.&C. 47, 48 (1918); *Edelstein v. Delaware, L.& W.R. Co.,* 6 D.&C. 72 (1896).

In the instant case the presumption of prejudice is rebutted by the record. All documentary evidence is preserved as exhibits presented at the first trial, the checks honored by the defendant banks, the checks

issued by Harford, the proof of loss forms executed by Lebrone and Fibus, the check issued by Lomas and Nettleton, the change of beneficiary forms. The issue of the grant of the power of attorney has already been disposed of as a matter of law. General estate administration may never be delegated by a general power of attorney and Lebrone had no specific power to receive any money. The only issue to be tried is whether the remaining corporate defendants should have issued checks or paid cash to Elizabeth Lebrone, executrix, without receiving a short certificate evidencing her fiduciary status. (The forged Paslow endorsement is not a pleaded issue.) That Lebrone produced no such document is not denied. The only witnesses to be called will testify as to the standard of the industry and rules, regulations and statutes imposing duties on insurance and banking corporations. This is not a case in which the memory of any witness is at issue nor the loss of a document.

No one is prejudiced by delay and the motion for non pros is denied.

## ORDER

And now, December 5, 1995, after consideration of the record and oral and written argument on the motion for non pros filed by Allegheny Valley Bank and the Harford Mutual Insurance Company, for the reasons set forth in the opinion filed this date, the court finds that the presumption of prejudice to defendants has been rebutted and it is ordered, adjudged and decreed that the motion for non pros is denied and counsel for all parties are directed to confer on January 3, 1996, at 9 a.m. with the court as to an appropriate date for jury trial.